## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | 1:19cv232 |
| v. | ) | 1:10cr56 |
| | ) | **Electronic Filing** |
| **MIKE BEAULIEU** | ) | |

## OPINION

Movant Mike Beaulieu ("Beaulieu" or "petitioner") commenced this action by filing a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. The government opposes the motion and the parties have fully briefed the matter. For the reasons set forth below, the motion will be denied.

On September 14, 2010, a grand jury returned a five count indictment against petitioner charging him with aggravated sexual abuse in violation of 18 U.S.C. § 2241(a), kidnapping in violation of 18 U.S.C. § 1201(a)(2), using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The indictment charged that all of the offenses occurred on August 3, 2010. On March 21, 2012, petitioner entered a plea of guilty to the charges of kidnapping at count 2 and using and carrying a firearm during a crime of violence at count 4 after engaging in a thorough plea colloquy conducted by the Honorable Sean McLaughlin.

At the time of the offenses, petitioner was a previously convicted sexual predator who was living in Anson, Maine. Pre-Sentence Investigation Report (PSIR) at p. 3 (defendant's legal address), ¶ 25, ¶ 55 (prior Gross Sexual Conduct). He had indicated to others and told the victim he was going to kill himself but he wanted to "rape someone" first. Transcript of December 7,

2012 Guilty Plea (Doc. No. 38) at 20, 22.  He had been reported missing in Maine on July 29, 2010, after he drove from Maine to the federal lands surrounding the Kinzua Dam in Warren County, Pennsylvania.  Id. at 22.  On August 3, 2010, he encountered a young couple meeting for a picnic.  Id. at 20.  He approached them, brandished a .45 caliber semi-automatic handgun, forced them to the ground, bound the boyfriend's arms and legs with rope, and then gagged him with duct tape.  Id.  He ordered the twenty-year-old female victim into his truck at gunpoint.  Id. He drove her to a nearby area, forced her at gunpoint to lie face first in the dirt, raped her and ejaculated inside her vagina.  Id. at 20, 22.  He then left the victim and fled the scene.

Defendant subsequently was apprehended in Canada.  Id. at 22.  During the crime defendant told the victim that the handgun was a .45 caliber.  Id. at 21.  A DNA sample from the seamen gathered from the rape kit was a match to petitioner's DNA.  Id. at 23.  Petitioner was still in possession of the handgun when he was apprehended.  Petitioner confessed to using the gun to commit the rape of the female victim.  Id. at 22.

With the exception of petitioner's prior record, petitioner admitted to each of the above facts as part of the change of plea colloquy.  Id. at 23.  His guilty plea to count 2 (kidnapping) and count 4 (using a firearm during and in relation to a crime of violence) was accepted by the court.  Id. at 24.  He thereafter was sentenced to life at count 2 and a 7 year consecutive sentence at count 4.  The remaining counts of the indictment were dismissed pursuant to the plea agreement.

Petitioner contends that following Davis v. United States, -- U.S. --, 139 S. Ct. 2319 (2019), which in line with the Court's prior precedents held that the residual clause contained in 18 U.S.C. § 924(c) is unconstitutionally vague, his 924(c) conviction at count 4 is unconstitutional because the underlying crimes referenced therein, kidnapping and aggravated

sexual abuse, could only have been found to be a crime of violence under the now unconstitutional residual clause. This is so because, according to petitioner, these underlying crimes do not have an element that requires the use of force within the meaning of § 924(c)'s elements clause. Petitioner notes that the Attorney General has taken the position that the crime of kidnapping at 18 U.S.C. § 1201(a)(2) does not have an element that requires the use, attempted use or threatened use of force within the meaning of § 924(c)(3)(A). And petitioner asserts that due to the indivisibility of the crime of aggravated sexual abuse at 18 U.S.C. § 2241(a), the crime charged at count 1 likewise does not have an element of force as defined in the applicable jurisprudence. So from petitioner's perspective, he was convicted of conduct that is no longer criminal. Given this state of affairs, petitioner requests this court to vacate the conviction at count 4 and use its discretion under the sentencing package doctrine to resentence petitioner at count 2.

To say that the government takes umbrage with the petitioner's position would be an understatement. It asserts that there are numerous procedural barriers to granting relief, including the inability to 1) overcome the appellate waiver in the plea agreement (which already has been enforced by Judge McLaughlin), 2) make a showing of the cause and prejudice required to overcome a procedural default, 3) provide a basis for bypassing the concurrent sentencing doctrine, and 4) identify a coherent path forward that accounts for the government's right to reinstate the dismissed counts in the event the conviction at count 4 is vacated.

Petitioner further posits that the court must apply the categorical approach. As part of that jurisprudence, he asserts that he only admitted the least culpable conduct needed to sustain his § 924(c) conviction. Here, where the offenses were identified in the disjunctive, petitioner maintains that the least culpable conduct consists of kidnapping, which the Attorney General has

conceded no longer qualifies as a crime of violence.  And even if the court were to consider the alternative offense of aggravated sexual abuse, that crime as defined is "indivisible."  Because it assertedly is an indivisible crime, the court may not look to any underlying records to ferret out which of the various "means" defendant employed to commit the crime.  And because § 2241(a) contains an attempt clause and it can be proven by such means as the offender threatening to kill himself if the victim does not submit and/or a mere disparity in size and coercive power sufficient to overcome the consent to the victim, the crime of aggravated sexual abuse falls outside the scope of § 924(c)'s elements clause in any event.  Thus, from petitioner's perspective, his conviction at count 4 no longer is predicated on a crime of violence and must be vacated because it rests on unconstitutional grounds.

A § 2255 motion may be disposed of summarily where the motion fails to set forth a basis upon which relief can be granted or where the factual allegations advanced in support of the motion are vague, conclusory or patently frivolous.  See Rule No. 4 of the Rules Governing § 2255 Proceedings; Blackledge v. Allison, 431 U.S. 63 (1977); Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972) (where the record affirmatively indicates that a claim for relief is without merit, it may be decided summarily without a hearing).  In Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), the United States Court of Appeals for the Third Circuit stated:

> A Section 2255 motion is addressed to the discretion of the trial judge
> in the first instance and where the record affirmatively indicates the
> claim for relief is without merit, the refusal to hold a hearing will not
> be deemed an abuse of discretion.

Id.; accord United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).  Other courts have reached the same conclusion.  See Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982) (proper for district court to dismiss portion of § 2255 petition without evidentiary hearing where

4

allegations conclusively failed to state a claim for relief); United States v. Oliver, 865 F.2d 600, 604 (4th Cir.), cert. denied, 493 U.S. 830 (1989) (district court may dismiss § 2255 petition pursuant to Rule 4(b) where record conclusively demonstrates that movant is not entitled to relief as a matter of law); Mathews v. United States, 11 F.3d 583, 584-86 (6th Cir. 1993) (where § 2255 petition raises no factual disputes and bases for relief are without merit, district court need not hold an evidentiary hearing and may dismiss the motion summarily).

Petitioner's efforts to obtain relief are precluded by three basic principles. First, the government may rely on either of the two alternative offenses identified in count 4, which necessarily brings to the forefront the issue of whether aggravated sexual abuse continues to qualify as a crime of violence notwithstanding the ruling in Davis. Second, petitioner seeks to clear the application of the appellate and collateral attack waiver in his plea agreement by demonstrating that he was convicted of conduct which no longer qualifies as a crime, which would supply a clear showing of a miscarriage of justice. But if § 2241(a)(1) requires proof of an element of force, then petitioner has not been convicted of conduct that is no longer criminal and he has not satisfied the gateway showing of a complete miscarriage of justice. And finally, if § 2241(a) requires proof of the use of force, then he may not obtain relief in any event.

To resolve the issue raised by petitioner's current challenge, the court must resort to the doctrine known as the categorical approach. The categorical approach has its roots in the Supreme Court's precedents interpreting the Armed Career Criminal Act, 18 U.S.C. § 924(e). United States v. Taylor, 495 U.S. 575, 590 (1990) ("Nor is there any indication that Congress ever abandoned its general approach, in designating predicate offenses, of using uniform, categorical definitions to capture all offenses of a certain level of seriousness that involve violence or an inherent risk thereof, and that are likely to be committed by career offenders,

regardless of technical definitions and labels under state law.").  And as subsequently refined, sentencing and reviewing courts determining whether an underlying predicate offense is a violent felony or serious drug offense under § 924(c) must apply the categorical approach.  United States v. Davis, -- U.S. --, 139 S. Ct. 2319, 2327-29 (2019); cf. Mathis v. United States, 136 S. Ct. 2243, 2248 (2016) ("To determine whether a prior conviction is for generic burglary (or other listed crime) courts apply what is known as the categorical approach: They focus solely on whether the elements of the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case."); United States v. Abbott, 748 F.3d 154, 157 (3d Cir. 2014) (same).

Descamps v. United States, 570 U.S. 254 (2013), clarified "the analytical approach that sentencing courts must use to determine if a prior conviction is a predicate offense under ACCA."  United States v. Blair, 734 F.3d 218, 222 (3d Cir. 2013).  Mathis further clarified and extended this approach to cases involving statutes that have "multiple alternative elements."  Mathis, 136 S. Ct. at 2249.  And the Court in Davis made clear that this approach applies to § 924(c)'s elements clause as it relates to the underlying crime(s) imbedded in a § 924(c) conviction.  Davis, 139 S. Ct. at 2328.

Under the categorical approach, a court must review the elements of the predicate offense to determine whether it falls within the statutory definition(s).  Under this approach, a "prior conviction qualifies as [a predicate or underlying offense] only if the statute's elements are the same as, or narrower than, those of the [statutorily identified predicate offense]."  United States v. Brown, 765 F.3d 185, 189 (3d Cir. 2014).

A categorical review is limited to the elements of the defendant's prior conviction "without inquiry into the specific conduct of [the] particular offender."  James v. United States,

550 U.S. 192, 202 (2007); United States v. Johnson, 587 F.3d 203, 208 (3d Cir. 2009); accord

Abbott, 748 F.3d 156 ("When deciding whether a previous conviction counts as a 'violent felony

or a serious drug offense' under the ACCA, a sentencing court may look only to the elements of a

defendant's prior conviction, not 'to the particular facts underlying those convictions.'") (quoting

Descamps, 133 S. Ct. at 2283 (quoting Taylor, 495 U.S. at 600).  In other words, only the fact of

conviction and the statutory definition of the offense, i.e., its elements, are relevant in

determining whether a crime is a predicate offense.  James, 550 U.S. at 202; accord Mathis, 579

U.S. at 504 (the categorical approach, "as we have always understood it, cares not a whit about

[the brute facts].") (citing Taylor, 495 U.S. at 599–602).

By identifying separate categories of predicate offenses based on their elements,

Congress evidenced an intent to have predicate offenses identified by uniform definitions that are

independent of the labels employed under the various States' criminal codes.  Taylor, 495 U.S. at

592: Mathis, 579 U.S. at 510.  These uniform definitions are confined to the elements that a jury

necessarily would have found in order to convict, regardless of whether the conviction arises

from a verdict or the entry of a guilty plea.  Descamps, 570 U.S. at 267; Mathis, 579 U.S. at 510.

In other words, "the only facts the court can be sure the jury [] found [in rendering a prior guilty

verdict] are those constituting elements of the offense - as distinct from amplifying but legally

extraneous circumstances [and] . . . when a defendant pleads guilty to a crime, he waives his

right to a jury determination of only that offense's elements[.]"  Descamps, 570 U.S. at 269-70;

accord Mathis, 579 U.S. at 504 (elements are the constituent parts of a crime's legal definition –

they are the things a jury must find beyond a reasonable doubt to convict and the things to which

a defendant must admit to enter a valid guilty plea).  Implemented in this way, the categorical

approach comports with the statutory text and history, avoids the Sixth Amendment concerns

that would arise from sentencing courts making findings of fact that properly belong to juries and "averts 'the practical difficulties and potential unfairness of a factual approach.'" Descamps, 570 U.S. at 267 (quoting Taylor, 495 U.S. at 601). And these principles, which were mainly fleshed out under the Armed Career Criminal Act, are applicable to offenses forming the predicate for a § 924(c) conviction, even though the predicate offense is in effect before the court as part of the current criminal proceeding. Davis, 139 S. Ct. at 2327 (In contrast to a statute requiring a presiding judge to determine whether a prior conviction before another court qualifies as a predicate offense, "a § 924(c) prosecution focuses on the conduct with which the defendant is currently charged. The government already has to prove to a jury that the defendant committed all the acts necessary to punish him for the underlying crime of violence or drug trafficking crime.").

A variant of the categorical approach known as the "modified categorical approach" has been approved for use in "a narrow range of cases." Brown, 765 F.3d at 189; Descamps, 133 S. Ct. at 2281; Mathis, 136 S. Ct. at 2249. Use of this approach is appropriate where "a prior conviction is for violating a so-called 'divisible statute.'" Descamps, 133 S. Ct. at 2281. A divisible statute "sets out one or more elements of the offense in the alternative." Id.; Brown, 765 F.3d at 190. If at least one of the alternative versions of the offense reflects the elements of a predicate offense under the statutory definition in question, then "the modified categorical approach permits [the reviewing court] to consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." Descamps, 133 S. Ct. at 2281; Brown, 765 F.3d at 189; Mathis, 136 S. Ct. at 2249. Where the conviction arises from the entry of a guilty plea, the list of approved documents are "the charging document, written plea agreement, transcript of plea

8

colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Brown, 765 F.3d at 189-90 (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)); accord Descamps, 133 S. Ct. at 2284 (in Shepard, "we again authorized sentencing courts to scrutinize a restricted set of materials -- here, 'the terms of a plea agreement or transcript of colloquy between judge and defendant' -- to determine if the defendant had pleaded guilty to [the offense of burglary as generically defined].").

Descamps made clear that the modified categorical approach always "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime." Brown, 765 F.3d at 190. (quoting Descamps, 133 S. Ct. at 2285).   The reviewing court is permitted "to examine a limited class of documents [only] to determine which of a statute's alternative elements formed the basis of the defendant's prior conviction." Id. (quoting Descamps, 133 S. Ct. at 2284).  "Review of these documents then permits the court to 'do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the [predicate offenses as they are statutorily defined].'" Id.  (quoting Descamps, 133 S. Ct. at 2284).  Any lingering question about the limited nature of this inquiry was put to rest in Mathis.  Mathis, 136 S. Ct. at 2251 ("Under ACCA, Taylor stated, it is impermissible for 'a particular crime [to] sometimes count towards enhancement and sometimes not, depending on the facts of the case.'  Accordingly, a sentencing judge may look only to 'the elements of the [offense], not to the facts of [the] defendant's conduct.'") (quoting Taylor, 495 U.S. at 601)).

The modified categorical approach is "applicable only to divisible statutes." Brown, 765 F.3d at 190.  A divisible statute is one that "lists multiple, alternative elements, and so effectively creates 'several different crimes,'" at least one of which has the same or more narrow elements as

the applicable statute's defined predicate or underlying offenses.  Descamps, 133 S. Ct. at 2283-85; Brown, 765 F.3d at 189 ("a statute is 'divisible' when it 'list[s] potential offense elements in the alternative.'") (quoting Descamps, 133 S. Ct. at 2283).  But more than general divisibility is required: "a sentencing court should apply the modified approach to a divisible statute and examine extra-statutory documents only when 'at least one, but not all' of the separate versions of the offense is, by its elements, a predicate offense."  Brown, 765 F.3d at 191 (citing with approval United States v. Cabrera–Umanzor, 728 F.3d 347, 352 (4th Cir. 2013) ("[g]eneral divisibility . . . is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence.") (quoting Descamps, 133 S. Ct. at 2285)).

In contrast, if a statute sweeps more broadly than a statutorily defined predicate offense because it consists of a "single, indivisible set of elements," then the statute is indivisible. Brown, 765 F.3d at 190 (quoting Descamps, 133 S. Ct. at 2282).  Likewise, "[i]f a statute is generally divisible into multiple versions, but each version is overbroad (covers at least some conduct that is not a [predicate offense]) and indivisible (cannot be further divided into sub-versions based on the elements), the extra-statutory documents are irrelevant and a sentencing court's analysis has reached a dead-end: the prior conviction is not a predicate offense."  Id. at 191 (citing Descamps, 133 S. Ct. at 2283).  In either scenario the modified categorical approach has no application to the court's inquiry and a conviction under the statute cannot be converted into a predicate offense.  Descamps, 133 S. Ct. at 2283; Brown, 765 F.3d at 193 (A statute that is "overbroad in that it criminalizes conduct that is not always considered a [prior predicate offense] and is thus indivisible "is categorically not a predicate offense for [the ACCA or career offender purposes].").  And this is so "even if the defendant actually committed the offense in its

[statutorily defined] form." Descamps, 133 S. Ct. at 2282-83; Brown, 765 F.3d at 191 ("If the state statute 'sweeps more broadly' than the federal definition, a conviction under it is not a career offender predicate even if the defendant actually committed the offense in a way that involved the use (or threatened use) of physical force against another.") (quoting Descamps, 133 S. Ct. at 2283); Mathis, 136 S. Ct. at 2253 ("ACCA, as just explained, treats such facts as irrelevant: Find them or not, by examining the record or anything else, a court still may not use them to enhance a sentence. And indeed, our cases involving the modified categorical approach have already made exactly that point. '[T]he only [use of that approach] we have ever allowed,' we stated a few Terms ago, is to determine 'which element[s] played a part in the defendant's conviction.'") (quoting Descamps, 570 U.S. at --, 133 S. Ct. at 2283, 2285).

Against this backdrop, petitioner essentially raises two basic arguments relating to whether the statutory definition of aggravated sexual abuse in § 2241(a) reflects a divisible offense. First, he posits that the statute is indivisible because it permits prosecutions for attempts. In this regard, the Court in Taylor recently made clear that the crime of attempt does not require the government to establish the use, threatened use of attempted use of force as an element. So from petitioner's perspective, the crime of aggravated sexual abuse is broader than the elements clause at § 924(c)(3)(A). Second, he asserts that the offense may be committed by conduct that indicates the elements of § 2241(a) extend well beyond § 924(c)'s elements clause. We disagree with each of these arguments.

Petitioner's attempt to transform the crime of attempted aggravated sexual abuse at § 2241(a) into one of several means to commit an "indivisible" offense is misguided. "Rather than rely on a general statute outlawing all attempts to violate federal criminal law, Congress has chosen to interweave prohibitions on attempted crimes within the statutes defining the

11

underlying substantive offenses.  In those statutes, it is clear that the words 'attempts to' authorize the prosecution of attempt offenses."  United States v. Walker, 990 F.3d 316, 329 (3d Cir. 2021). The statute in question here, aggravated sexual abuse, follows this approach.  See 18 U.S.C. § 2241(a).

The Supreme Court recently considered whether a conviction for attempt constitutes an underlying crime of violence as defined by § 924(c)(3)(A) where the statute contains a predicate offense and also authorizes prosecutions for an attempt of the predicate offense.  In United States v. Taylor, 142 S. Ct. 2015 (2022), the Court considered whether attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) can qualify as a predicate offense under the elements clause at § 924(c)(3)(A).  Id. at 2019.   "That clause covers offenses that 'ha[ve] as an element the use, attempted use, or threatened use of physical force against the person or property of another.'"  Id. (quoting U.S.C. § 924(c)(3)(A)).  Among other things, the Court squarely held that while the completed offense of Hobbs Act robbery requires the government to prove the defendant took or obtained property from another by means of actual or threatened force, the crime of attempted Hobbs Act robbery required proof of two separate and distinct elements: "(1) [t]he defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a "substantial step" toward that end.") (citing United States v. Resendiz-Ponce, 549 U.S. 102, 107 (2007)).  Because proof of a "substantial step" can at times be satisfied by conduct that does not involve the use, threatened use or attempted use of force, the offense of attempted Hobbs Act robbery cannot qualify as a predicate offense for a § 924(c) conviction under the categorical approach.  Id. ("Whatever one might say about completed Hobbs Act robbery, attempted Hobbs Act robbery does not satisfy the elements clause" because "whatever a

12

substantial step requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property.").

Given the fairly universal formulation of the crime of attempt, Taylor makes clear that the crime of attempt cannot qualify as an underlying offense for a § 924(c) conviction because the elements of intent and a substantial step will inevitably fall short of requiring the government to prove in every case an element that involves the use, attempted us, or threatened use of force. Id. ("The only relevant question is whether the federal felony at issue always requires the government to prove - beyond a reasonable doubt, as an element of its case - the use, attempted use, or threatened use of force. This Court has long understood similarly worded statutes to demand similarly categorical inquiries.") (citing Borden v. United States, 593 U. S. --, --, 141 S. Ct. 1817 (2021); Davis, 139 S. Ct. at 2328; and Leocal v. Ashcroft, 543 U.S. 1, 7 (2004)).

It follows from Taylor that the offense of attempt embedded in aggravated sexual abuse necessarily requires the government to prove elements that differ from the completed offense of aggravated sexual abuse. It further follows that a conviction for such an attempt necessarily would not constitute a crime of violence under § 924(c)'s elements clause. Thus, if at least one statutory component of § 2241(a) constitutes a crime of violence, then the statute is divisible and the modified categorical approach applies because 1) one offense within the statutory definition of the crime is a crime of violence and 2) the crime as statutorily defined contains a separate crime that requires proof of elements that are separate from the crime of violence. See, e.g., Descamps, 133 S. Ct. at 2285 ("a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence."); accord Brown, 765 F.3d at 191; Cabrera–Umanzor, 728 F.3d at 352. We turn to that analysis.

A review of the caselaw interpreting § 2241(a) makes clear that the completed offense of aggravated sexual abuse defined therein always requires the government to prove the use of force or the threatened use of force in a manner sufficient to satisfy the elements clause in § 924(c)(3)(A).  In the area of sexual abuse, the degree of force needed for conviction under a particular statute frequently arises.  See generally United States v. Daniel, 2021 WL 3037404 (D. Idaho, July 19, 2021).  The statutes in this area often require one of two common formulations: force sufficient to overcome the will of the victim and thus obtain a sexual act without consent; and physical force sufficient to overcome the person and thus obtain a sexual act without consent.  Id. at *4-5.  In conducting the inquiry, courts have been required to grapple with whether the force required must be more than that inherent in the act of sexual penetration in intercourse.  Id. at *5-7 (surveying caselaw).

In United States v. Boyles, 57 F.3d 535 (7th Cir. 1995), the court was required to consider the elements of aggravated sexual abuse at § 2241(a) and the elements of sexual abuse at § 2242(1) pursuant to the defendant's challenge of the trial court's failure to submit a lesser-included offense instruction to the jury.  The court opined:

> A side by side comparison of the two sexual assault statutes shows that the elements of 18 U.S.C. § 2241(a)(1), the crime of aggravated sexual assault, are: knowingly causing another to engage in a sexual act by using force against that person, whereas the elements of the crime of sexual assault, 18 U.S.C. § 2242(1), are: knowingly causing another to engage in a sexual act by threatening them or placing them in fear.  Sexual assault requires that the government prove that the victim was threatened or placed in fear, neither of which is a required element of aggravated sexual assault.  We have often said that the best way to interpret statutes is to look to their plain language for it is "the most reliable indicator of congressional intent."  Central States, et al. v. Cullum Companies, 973 F.2d 1333, 1339 (7th Cir.1992).
> "Fear" and "threats" are different from "force."  "Force" is "power, violence, compulsion, or constraint exerted upon or against a person."  Black's Law Dictionary 644 (6th ed. 1990).  Force is the exertion of physical power upon another to overcome that individual's will to resist, whereas fear and threats are not classified as physical power, but

14

rather overcoming one's will to resist through mental and emotional power.  The very language of the two sexual assault statutes is different.  One requires the overpowering of a victim's will by the use of force, while the other mandates overpowering the victim's will by use of threats or fear.  * * *

When proving the crime of sexual assault, the government must establish that the rapist overcame the victim's will to resist by the use of fear or threats. Aggravated sexual assault merely requires the use of force in the commission of the crime.  The sexual assault delineated in the statutory language is not a lesser included offense of aggravated sexual assault and the trial judge did not commit error, as alleged, when he failed to instruct the jury, *sua sponte*, concerning what the defendant argues is a lesser included offense, that of sexual assault.

Id. at 544-45.

The court in United States v. Cates, 882 F.3d 731 (7th Cir. 2018), was required to revisit the elements of § 2241(a) after the trial court had instructed that the needed "force" as used in § 2241(a) did not require that the government prove the defendant used actual violence and instead the government could satisfy its burden by "a showing of . . . the use of threat of harm sufficient to coerce or compel submission by the victim." Id. at 737.  The instruction continued: the needed "[f]orce may also be implied from a disparity in coercive power or in size between the defendant and [the victim]." Id.  The panel in Cates found this instruction "badly flawed" and explained that "[w]e long ago held that the term force in § 2241(a) means physical force." Id. at 737 (citing Boyles, 57 F.3d at 544.).  It further opined:

By defining "force" in this expansive way, the jury instruction flatly contradicted the text of § 2241(a)(1) and our decision in Boyles.  The instruction plainly misstated the law by wrongly suggesting that force does not mean physical force.  The jury was told that threats and other nonphysical forms of coercion—including a mere disparity in coercive power or size—could suffice to establish force.  That erroneously conflated the distinction between "force" and "fear," relaxing the government's burden.  The instruction permitted the jurors to find that Cates committed aggravated sexual abuse based on proof of something less than either physical force or a threat or fear of death or serious bodily injury.

Id.

Our court of appeals has defined the elements of § 2241(a) in the same manner. In United States v. Shaw, 891 F.3d 441 (3d Cir. 2018), the court was required to determine whether the crime of aggravated sexual abuse as defined in § 2241(a) can be established by the use of threat or fear-inducing coercion sufficient to overcome the will of the victim or instead requires proof of actual use of physical force or specific threats of actual force sufficient to overcome the victim's person. There, the defendant was convicted of deprivation of civil rights under 18 U.S.C. § 242 for unwanted sexual contact and was sentenced to 25 years of incarceration followed by 5 years of supervised release for an aggravated violation of the statute. Under the graded structure of § 242, the legality of the sentence turned on whether the evidence was sufficient to sustain a conviction for aggravated sexual abuse under 18 U.S.C. § 2241(a) and, if so, whether the trial court had given proper instructions on what the government was required to prove in order to satisfy the elements of § 2241(a).

The court in Shaw agreed with the holding in Cates that it is erroneous to conflate the distinction between force and fear and permit a jury to convict on aggravated sexual abuse based on "proof of something less than either physical force or a threat of fear of death or serious bodily injury." Id. at 451. And the trial court's instructions could have misled the jury into believing that non-consent or coerced consent was equivalent to the required use of force or threat of death or serious bodily injury. Id. In doing so, the trial court undermined the graded approach Congress adopted in promulgating § 2241(a). Id.

Nevertheless, the Shaw court upheld the jury's finding of guilt under § 2241(a). The district court also had instructed the jury that "Section 2241(a) requires either 'using force against the other person . . . or . . . placing the other person in fear that any person will be subjected to death, serious injury or kidnapping." It further required the jury to find the

16

defendant "used force during the alleged sexual assault" and emphasized that the offense contained a "requirement of force."  Id. at 452.  These aspects of the jury instruction rendered any potential confusion from the disparities portion of the instruction harmless and required the appellate court to uphold the verdict because the charge as a whole made clear that the jury could only convict for the aggravated offense upon a finding of actual force.[1]  Id.

Section 2241(a) defines the completed offense of aggravated sexual abuse as an offense that requires the use of force or the threat of force that creates a fear of death or serious bodily injury.  Shaw, 891 F.3d at 451; United States v. H.B., 695 F.3d 931, 936 (9th Cir. 2012) (§ 2241(a)(1) "requires a showing of actual force.") (quoting United States v. Fulton, 987 F.2d 631, 633 (9th Cir. 1993)); United States v. Martinez, 110 f.4th 160, 172 (2d Cir. 2024) (following Lauck and concluding that § 2241(a)(1) requires a showing that the defendant used force against another to cause a sexual act).  This requirement satisfies the force requirement in § 924(c)(3)(A) and thus the offense is a crime of violence under that section.  It also defines an offense for attempting to commit aggravated sexual abuse.  18 U.S.C. § 2241(a).  This offense is not a crime of violence under 924(c)(3)(A).  Taylor, 142 S. Ct. at 2019.  The statute thus defines an offense that falls under the elements clause in § 924(c) and an offense that does not.  So Section 2241(a) is divisible.

In considering whether defendant pled guilty to a crime of violence under 924(c)(3)(A) when the underlying statute defines both a predicate and non-predicate offense, "[t]he inquiry into the underlying predicate crime of violence is fact-based."  United States v. Stoney, 62 F.4th 108, 112 (3d Cir. 2023).  The question is: what crime did the defendant admit

---

[1]  "Under Section 2241(a)(1), '[t]he requirement of force may be satisfied by a showing of . . . the use of such physical force as is sufficient to overcome, restrain, or injure a person . . . .'"  Id. at 452-53 (quoting United States v. Lauck, 905 F.2d 15, 17 (2d Cir. 1990)).

to committing.  Id.  Therefore, it is proper to consider not only the indictment, but the "plea agreement and the attendant factual proffer" made at the change of plea hearing.  Id. (citing In re Navarro, 931 F.3d 1298, 1302 (11th Cir. 2019) (noting that Navarro's "plea agreement and the attendant factual proffer more broadly establish that his § 924(c) charge was predicated both on conspiracy to commit Hobbs Act robbery and drug-trafficking crimes."; and collecting cases at n. 3).

The indictment and transcript of the change of plea hearing establish that defendant committed the offense of aggravated sexual abuse as charged in count one.  Count one charged that defendant did knowingly cause the victim to engage in a sexual act by the "use of force against the victim T.M.G., and by threatening and placing the victim T.M.G. in fear that she would be subjected to death, serious bodily injury and kidnapping, in that the defendant did use a handgun to force the victim, T.M.G., to engage in a sexual act[,]" in violation of Title 18, United States Code, Section 2241(a).  Indictment (Doc. No. 1) at p. 1.  Count four charged defendant with knowingly using a firearm, "during and in relation to a crime of violence, . . . that is aggravated sexual abuse and kidnapping, contrary to the provisions of Title 18, United States Code, Sections 2241(a) and 1201(a)(2), as charged in Counts One, Two and Three, in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii)."

As to the elements of the § 924(c)(1)(A) charged at count four, the judge advised defendant at the change of plea colloquy as follows:

in order for the crime of using and carrying a firearm during a crime of violence, in violation of 18 U.S.C. 924(c)(1)(A)(ii), to be established, the government must prove all of the following essential elements beyond a reasonable doubt:
    That Mike Beaulieu committed the crimes of aggravated sexual abuse and kidnapping as charged in Counts One, Two and Three.  That during and in relation to the commission of that crime, Mike Beaulieu knowingly used/carried a firearm.  The phrase "uses or carries a firearm" means having a firearm, or firearms, available to assist or to aid in the commission of the crime of aggravated sexual abuse and

18

kidnapping. "Use" means more than mere possession of a firearm by a person who commits a crime; to establish use, the government must show active employment of the firearm. If the defendant did not either disclose or mention the firearm or actively employ it, the defendant did not use the firearm. "Carry" means that the defendant had the firearm on his person/possessed the firearm. That Mike Beaulieu used/carried the firearm during and in relation to the crime of aggravated sexual abuse and kidnapping. During and in relation to means that the firearm must have had some purpose or effect with respect to aggravated sexual abuse and kidnapping. The firearm must have had at least facilitated or had the potential of facilitating aggravated sexual abuse and kidnapping.

Do you understand the elements insofar as that count are concerned?
THE DEFENDANT: Yes, sir.

Change of Plea Hearing of March 21, 2012 (Doc. No. 38) at p. 9-10.

At the hearing the government proffered the following factual basis:

The testimony would establish that on August 3, 2010, a 20-year-old victim, there are two victims in this case, your Honor, I will identify them today with their initials, consistent with how they're identified in the Indictment. The 20-year-old I will identify with the initials T.M.G., and her 23-year-old, the boyfriend, C.J.E., were in the Allegheny National Forest at Kinzua Point Information Center.

The testimony, your Honor, will show this is an area within the special maritime and territorial jurisdiction of the United States. At around 3 o'clock p.m., Mr. Beaulieu, who was eventually identified as Mr. Beaulieu, approached T.M.G. and C.J.E. They actually observed this individual, who they later identified as Mr. Beaulieu, standing somewhere in their vicinity when they arrived at the Kinzua Point Information Center solely to meet together to go on a picnic.

Shortly thereafter, Mr. Beaulieu approached them at gun point, he ordered them to the ground. Mr. Beaulieu bounds C.J.E.'s arms and legs with a rope, and gags him with duct tape. He then ordered the girl, the 20-year-old, T.M.G., into his truck at gun point. He drove off with her to a more secluded location in the forest.

Then still at gun point, Mr. Beaulieu ordered T.M.G. to lie face first on the ground. He then raped her, penetrated her vagina with his penis and ejaculated inside of her.

On the ride to the location, the testimony would show that Mr. Beaulieu had told T.M.G. that he was going to kill himself, but wanted to rape someone before he died.

After raping T.M.G. at gun point, Mr. Beaulieu told her to stay there until he returned, and he then drove off. T.M.G. was able to gather herself and walk through the woods towards the traffic noise and flagged down an oncoming vehicle, and a passing Pennsylvania police trooper arrived.

T.M.G. was taken to the hospital in Warren for an examination and collection of evidence, including samples of the assailant's DNA through the semen from the rape itself.

During the course of the incident with Mr. Beaulieu, T.M.G. would testify that she engaged in a conversation to keep herself from being killed and was able to learn that the gun he has was a .45 caliber.

\* \* \*

With the assistance of the U.S. Marshals and the Royal Canadian Mounted Police, Mr. Beaulieu was captured at his grandmother's property in Canada shortly thereafter. At the time of the capture, he was unlawfully in possession of the gun that was used to rape T.M.G.  In an interview with members of the Royal Canadian Mounted Police, Mr. Beaulieu confessed in detail to using the gun to commit the rape of T.M.G.

\* \* \*

In addition, your Honor, Forensic Scientist II Frank Kist, from the Pennsylvania State Police crime laboratory, would testify that the DNA profile, the sperm and the vaginal swabs taken during the rape examination of T.M.G., in fact matched the DNA profile of Mr. Beaulieu, that not only had been obtained through law enforcement databases, but also had been obtained as a result of a search warrant being executed for Mr. Beaulieu. That would be the nature of the government's proof.

THE COURT: Mr. Beaulieu, you just heard what Mr. Piccinini said by way of a summary, do you agree with everything he just said?

THE DEFENDANT:  Yes, sir.

Id. at 19-23.

It follows that defendant knowingly, intelligently and voluntarily admitted to committing the actual offense of completed aggravated sexual assault in violation of 18 U.S.C. § 2241(a).  He used and carried a firearm to do so and he admitted to using force against the victim sufficient to place her in fear that she would be subjected to death, serious bodily injury and kidnapping.  In other words, defendant admitted that he committed the elements of the predicate offense of aggravated sexual assault as charged in count one and defined in Shaw.

Having pled to count four in a manner that established the elements of count one as one of the predicate offenses, the record shows that defendant committed a predicate offense that is a crime of violence under § 924(c)(3)(A).  Thus, Davis does not remove his conduct

from the reach of criminal liability or otherwise provide defendant with an avenue for vacating his conviction and/or sentence.

The court has considered whether the government's ability to prove "kidnapping" in establishing the physical force element in § 2241(a)(1) removes defendant's conviction at count four from the scope of the elements clause and concludes that it does not.  In this regard, the ruling in United States v. Faulls, 23 WL 3260551, *11 (W.D. Va. May 4, 2023), that "kidnapping under § 2241(a)(2) requires the use of physical force" is persuasive.

There, in the face of a challenge pursuant to § 2255 asserting that the definition of aggravated sexual abuse in § 2241(a)(1) did not satisfy the elements clause of § 924(c)(3(A), the court concluded that § 2241(a)(1) always requires the government to prove the use of violent physical force against another.  Id. at *9 ("I find that force means violent, physical force.").

As to the use of the term "kidnapping," the court rejected the defendant's contention that the term referred to the federal statutory definition at 18 U.S.C. § 1201(a), which can be committed without the use of force, and concluded that Congress intended the term to have its common law definition.  The court opined:

> "Kidnap" is defined at common law to mean "to take and carry a person by force and against his will."  United States v. Young, 512 F.2d 321, 323 (4th Cir. 1975).  So defined, kidnapping would require the use of strong physical force.  The defendant's competing definition, by contrast, would conflict with the "usual rule of statutory interpretation that a law's terms are best understood by 'the company they keep.'"  United States v. Taylor, 142 S. Ct. 2015, 2023 (2022) (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995)); United States v. Williams, 553 U.S. 285, 294 (2008) (interpreting terms based on the "neighboring words with which it is associated").  It is reasonable to read the statute's string of operative words — death, severe bodily injury, and kidnapping — as requiring threats of a serious, physical nature.  While kidnapping is certainly susceptible to include conduct that does not require physical force, its meaning is narrowed by its association in the statute with "death" and "severe bodily injury."  Surely it would not be Congress's intent to group such conduct with mere deceit or non-consent of a parent, as suggested by

the defendant; such a definition would vastly expand the statute's reach by sweeping in less severe types of threats.

This interpretation is also consistent with the statute's other provisions. Congress separated out aggravated sexual abuse from non-aggravated sexual abuse by providing more severe punishment under the former for only certain types of more serious threats: death, severe bodily injury, and kidnapping. Shaw, 891 F.3d at 448. Specifically, non-aggravated abuse prohibits knowingly "caus[ing] another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping)." 18 U.S.C. § 2242(1) (emphasis added). When read together, these two provisions "demonstrate Congress's graded approach to criminalizing sexual assault." Shaw, 891 F.3d at 448.

Accordingly, I find that kidnapping under § 2241(a)(2) requires the use of physical force. In so holding, I decline to adopt the defendant's proposed use of the generic offense definition of kidnapping.

Faulls, 23 WL 3260551 at *10-11.

We agree with Judge Jones. The statutory text and structure of § 2241(a) strongly support the conclusion that Congress used the term "kidnapping" as understood by its common law definition in defining the crime of aggravated sexual abuse. And this interpretation is harmonious with the force element of § 2241(a)(1) as interpreted by Shaw. So we adopted it here.

It follows that Davis did not remove defendant's underlying criminal conduct from the definition of a crime of violence set forth in § 924(c)(3)(A), and defendant's admission to the offense charged at count one continues to establish that he used a firearm during and in relation to a crime of violence. Consequently, he is not entitled to relief and his motion pursuant to § 2255 will be denied.

Finally, petitioner's concomitant request for a certificate of appealability must be denied. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the district court has rejected a constitutional claim on its merits, to obtain a certificate "[t]he [movant ] must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  "[W]hen a district court denies a habeas petition on procedural grounds without reaching the merits of the underlying constitutional claim . . . a COA may issue only if the petitioner shows that: (1) 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling;' and (2) 'jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"  Pabon v. Superintendent, SCI-Mahanoy, 654 F.3d 385, 392 (3d Cir. 2011) (quoting Slack, 529 U.S. at 478).

Applying those standards here, jurists of reason would not find it debatable as to whether petitioner's contentions supply a sufficient basis for further record development.  As noted above, the applicable law and information of record demonstrate that his claims regarding the lack of an underlying predicate offense that constitutes a crime of violence are meritless and reasonable jurists would not find the court's assessments to be debatable or wrong.  Accordingly, petitioner's concomitant request for a certificate of appealability must be denied.

For the reasons set forth above, petitioner's motion pursuant to § 2255 will be denied as meritless and his concomitant request for a certificate of appealability likewise will be denied. Appropriate orders follow.

Date: March 30, 2026

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:     Michael Leo Ivory, AUSA
        Christian A. Trabold, AUSA
        Renee Pietropaolo, AFPD

        (*Via CM/ECF Electronic Mail*)